662 So.2d 970 (1995)
CONCEPT, L.C., a Florida limited liability company now known as Tech-Cessories, L.C.; Willy A. Siersma and Geeta Siersma, Appellants/Cross-Appellees,
v.
Jeffrey GESTEN, Julius J. Gesten, Zeraline Gesten and Gesten Enterprises, Inc., formerly known as Tech-Cessories, Inc., Appellees/Cross-Appellants.
Nos. 93-2041, 93-2753.
District Court of Appeal of Florida, Fourth District.
October 11, 1995.
Order Granting Rehearing and Clarifying Opinion November 27, 1995.
*971 Edward A. Marod and Joseph Ianno, Jr., of Edward A. Marod, P.A., West Palm Beach, for appellants/cross-appellees.
Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., and Larry M. Mesches, P.A., West Palm Beach, for appellees/cross-appellants.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellants, purchasers of a business, filed a multi-count complaint against appellees, the sellers. Appellees responded with a multi-count counterclaim. The trial court adroitly winnowed the issues so that, for purposes of the dispositive issues on this appeal, the case went to the jury only on the appellants' count for breach of warranty. Because the jury was not allowed to consider all elements of damages supported by competent evidence, we reverse the judgment and remand for a new trial.
The facts and procedural matters relevant to the appellate issues we deem dispositive can be stated succinctly. The written agreement under which appellants purchased a business from the appellees allocated the $684,134.92 purchase price among the various *972 assets. The amounts allotted to the intangible assets were $450,000.00 for patents and non-compete agreements, $26,500.00 for tradenames and $23,500.00 for goodwill. After taking over the operation, appellants perceived that written warranties and representations concerning the condition of the business were not true. They brought this suit alleging, among other things, breach of warranty, the count upon which the case ultimately went to the jury.
Appellants' evidence pertaining to the damages relevant to this appeal consisted primarily of the opinion testimony of their expert witness. He opined that (1) had the business been as warranted, its value at the time of closing would have been the contract price ($685,134.92), and (2) due to appellees' breach of warranties, at the time of closing the value of the goodwill and other intangible assets was zero and the value of the tangible assets (inventory and equipment) was $130,301,95. He also stated that goodwill and intangibles were not the same, intangibles being the broad category that included not only goodwill but also the patents, tradenames and covenants not to compete.
Initially, appellants sought damages under the "benefit of the bargain" rule, i.e., the difference between the value of what they received and the value of the business had it been as warranted. See, e.g., Martin v. Brown, 566 So.2d 890 (Fla. 4 DCA 1990). Nonetheless, (perhaps because appellants' only evidence of the value of the business had it been as warranted was the opinion of their expert witness), at the charge conference appellants' counsel requested the court to give the jury the following instruction[1] on "out-of-pocket" damages:
If, however, the greater weight of the evidence does support Plaintiffs' claims in this regard Plaintiffs will be entitled to damages in the amount of the difference between the price of goodwill and intangibles set forth in the Agreement and the actual value of the goodwill and intangibles purchased. The only part of this calculation which you are to perform is to determine the actual value, at the time of the closing, November 9, 1991, of the goodwill and intangibles purchased.
This requested instruction was supported by the evidence and appellants were entitled to have the jury properly instructed on this measure of damages. The court proposed, however, that rather than give the jury any instructions on damages it would give the jury an interrogatory verdict structured in such a manner that the damages could be determined by the court after trial. By way of illustration, and apropos to this case, proposed interrogatory No. 3 asked the jury to state the value of goodwill at the time of closing. Thus, the court explained, the jury's response to this interrogatory would be subtracted from $23,500 (the portion of the contract price allocated to goodwill), and the difference, if any, would be the appellants' damages for diminution in the value of goodwill. Appellants' counsel agreed to the procedure, but objected to the form of the proposed special verdict because it contained no interrogatory which would allow the jury to similarly state the value of the intangibles at the time of closing. He argued that on the evidence the jury could find that not only goodwill, but also the other intangibles, had an actual value less than that for which the parties had contracted. The court overruled this objection, and also denied appellants' renewed request that the jury be instructed on damages in accordance with the above requested instruction. These rulings are asserted here as error.
During its deliberations the jury asked the court for clarification of question No. 3, specifically whether the amount could be a negative number. The court's response was "This is what you are going to tell us." *973 Upon returning its verdict, the jury answered question No. 3 by stating the value of the goodwill on the date of sale was a negative $415,134.92.[2] The verdict was received without objection from either counsel and the jury was discharged.
Appellants moved for entry of a judgment to include (in addition to other elements of damages not relevant to this issue) the sum of $438,634.92, the latter being the arithmetical difference between the contract's valuation of goodwill and the jury's valuation of goodwill. Defendant appellees timely filed motions for (1) judgment notwithstanding the verdict, and (2) remittitur, or alternatively, a new trial. The court ruled only on appellees' motions. It denied the motion for remittitur, granted the motion for judgment notwithstanding the verdict, and entered a judgment which, in effect, awarded appellants $23,500 as the amount of damage for the diminution of the value of goodwill.
We consider first the issue of appellants' requested jury instruction on damages. Every party seeking damages before a jury is entitled, upon appropriate request, to have the jury properly instructed on the law applicable to those damages sought by the pleadings and supported by competent substantial evidence. Because in this case the agreed procedure eliminated all instructions to the jury on damages, appellants' entitlement to jury instructions on damages translated into an entitlement to have the special verdict structured so as to allow the jury to consider all damages supported by the evidence. As noted above, appellants' evidence, if believed by the jury, would have supported a jury finding that the intangibles, other than goodwill, had a value at closing less than that for which the parties contracted. It was error for the court to submit to the jury, over objection, a form of interrogatory verdict which did not afford the jury the opportunity to consider all of the damages supported by the evidence. This error alone requires reversal of the judgment and remand for a new trial.
In their brief appellants have expressed a willingness to forego entitlement to a new trial should we agree with their separate argument, i.e., that the verdict should be reinstated because the court erred in granting the motion for judgment notwithstanding the verdict. In support of this argument they contend that (1) Florida practice no longer recognizes a motion for judgment notwithstanding the verdict, (2) a motion so labeled may not be treated as a motion for judgment in accordance with motion for directed verdict under Rule 1.480, Florida Rules of Civil Procedure, when, as here, the moving party has not made a motion for directed verdict at the close of all the evidence, (3) even if the motion had been proper to be considered the court's determination that goodwill cannot, as a matter of law, have a negative value was erroneous, and (4) the court in granting the motion improperly substituted its fact finding for that of the jury. We briefly address these contentions seriatim.
The first two contentions are only of academic interest as concerns the disposition of this case. Hall v. Ricardo, 331 So.2d 375 (Fla. 3d DCA 1976), cited by appellants, supports both contentions. However, there are numerous other court decisions subsequent to Hall, as well as current rules of practice, which continue to recognize a motion for judgment notwithstanding the verdict as alive and well in Florida practice.[3]See, e.g., *974 Keene Bros. Trucking, Inc. v. Pennell, 614 So.2d 1083 (Fla. 1993); Fla.R.Civ.P. 1.470(c); Fla.R.App.P. 9.020(g). This argument is academic, however, because irrespective of the label given to the motion which the court's order purported to grant, the latter was the functional equivalent of an order granting a remittitur, discussed below. While we would not encourage the random use of any motion for whatever purpose might seem expedient, we nonetheless in this instance favor substance over form.
As to the third contention, we hold that the goodwill of a business, sold as a discrete asset for an agreed price, cannot, as a matter of law, have a negative value. While appellants cite cases and texts in which "negative goodwill" is recognized as an accounting concept in appropriate circumstances, see, e.g., General Outdoor Advertising Co. v. United States, 137 Ct.Cl. 607, 149 F. Supp. 163 (1957), cert. denied, 355 U.S. 891, 78 S.Ct. 264, 2 L.Ed.2d 190, and Endicott Johnson Corp. v. Bade, 37 N.Y.2d 585, 376 N.Y.S.2d 103, 338 N.E.2d 614 (1975), those concepts have nothing to do with measuring the actual value of goodwill as an asset. We therefore uphold the court's determination that the jury could not, as a matter of law, find a negative value for goodwill.
The fourth contention must fail as well. The verdict not only was contrary to law, but also was clearly contrary to the evidence. While the evidence, viewed most favorably to appellants, would have supported a finding that the value of goodwill at closing was zero, there was not nor could there have been any evidence that the value of goodwill at closing was less than zero. It was incumbent upon the court, faced with a verdict that could not stand, to rectify the matter. The options were to grant a new trial outright or to grant a new trial unless the plaintiffs accepted a remittitur.
What the court did, in effect, was to set aside that part of the jury verdict that was contrary to the law and the evidence, and reduce the damages to the highest amount that the jury could properly have awarded consistent with the limited issue submitted to the jury. This, of course, is exactly the procedure that should be followed in granting a remittitur, Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1977), except for one significant detail. A trial judge is not permitted to reduce the verdict of a jury by ordering a remittitur, without permitting the plaintiff the option of a new trial. Dura Corp. v. Wallace, 297 So.2d 619 (Fla. 3d DCA 1974). Thus, while the court had the authority to reduce the verdict as it did, it nonetheless reversibly erred in not granting appellants the choice of accepting the remittitur or a new trial. That appellants, given the option, would not have accepted the remittitur, is adequately manifested by this appeal. Were we reaching our decision on this point alone, it would require reversal of the judgment and remand for a new trial.
The judgment is reversed, and this cause is remanded for a new trial. This disposition makes it unnecessary for us to decide or discuss the other points on the appeal and cross-appeal.
REVERSED AND REMANDED.
POLEN and FARMER, JJ., concur.
BY ORDER OF THE COURT:
ORDERED that appellants' motion for rehearing on order denying appellants' motion for appellate attorneys' fees is granted, and appellants' motion for appellate attorneys' fees is granted provisionally conditioned upon appellants ultimately being the prevailing party in this litigation. See, Foley v. Fleet, 652 So.2d 962 (Fla. 4th DCA 1995).
ORDERED that appellees' motion for rehearing on order denying appellees' motion for appellate attorneys' fees is denied.
ORDERED that appellees' motion to clarify opinion is granted; the reversal of the final judgment with directions to grant a new trial effectively vacated the "prevailing party" attorneys' fees award to plaintiffs/appellants, without prejudice to a redetermination based on the ultimate outcome. See, Chabad House-Lubavitch of Palm Beach County, Inc. v. Banks, 609 So.2d 780 (Fla. 4th DCA *975 1992); Aristek Communities, Inc. v. Fuller, 453 So.2d 547, 548 (Fla. 4th DCA 1984).
NOTES
[1] Appellants filed two dissimilar sets of requested jury instructions. At the charge conference only the second set of requested instructions was presented to the court, appellants' counsel stating that the first set had been filed "to preserve our appellate rights." One of the appellants' issues on this appeal is the court's failure to give one of the requested instructions from the set that was filed but not presented to the court at the charge conference. For instructive purposes we point out that to preserve the matter for appeal rule 1.470(b), Florida Rule of Civil Procedure, contemplates not simply the filing of the requested charge but that the requested charge be brought to the court's attention.
[2] Appellants' counsel had argued to the jury that because appellants were now saddled with a worthless business and still owed appellees $415,134.92 in notes for which appellees had counterclaimed, the "goodwill" of the business on the date of sale was a negative $415,134.92. Apparently this argument was effective. Appellants make a similar argument here, except they designate the deficiency as "negative net worth," an entirely different concept.
[3] The use of a motion for judgment notwithstanding the verdict was not, in this case, compatible with the traditional and historic use of such a motion. In the common law a motion "non obstante veredicto" was available only to the plaintiff and only for matters and things appearing on the face of the pleadings. It could not be used to question the sufficiency of the evidence to support the verdict. Tolliver v. Loftin, 155 Fla. 698, 21 So.2d 359 (1945). Courts now sanction less preciseness in the labeling of motions, looking more to their substance, see, e.g., De Mendoza v. Board of County Comm'rs, 221 So.2d 797, 799 (Fla. 3rd DCA 1969), and no longer restrict the use of a motion for judgment notwithstanding the verdict to plaintiffs. See, e.g., Keene Bros. Trucking Inc.